All rise. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw a knot and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. The first case we're going to hear this morning, Woodson v. Allstate Insurance, and Mr. Nielsen, I guess we're here for you. Good morning, Your Honors. My name is Jerry Nielsen. I'm here on behalf of Allstate Insurance Company, which appears before you as the fiduciary and the fiscal agent of the United States. It is my client's burden before you this morning, that in the light of the facts, taking the facts in the light most favorable to the plaintiff, that this judgment would still fall as a matter of law. And the first question is, what law? It's the federal law. It's the Supreme Court's holdings governing all federal insurance programs. It's not state insurance rules of notice, prejudice, estoppel, waiver. As to the time bar rule, there are four one-page letters in the record that need to be looked at in terms of the time bar issue. I want to make clear, the first one, for September 20, 2011, we're not standing on that one as a claim denial letter. Plaintiff is correct. Why don't you start with the February 28 letter? That's the first one where they denied coverage. Well, the first one is the January 23, Your Honor. It just says the proof of claim is inadequate. That's a procedural. Stick with the 28, if you will. Okay. As to the February 28 letter, both sides agree that that is a denial of claim letter. The only question is, would tolling affect the outcome of the case? So you start with Merrill, the Supreme Court's holding that everyone is charged with knowledge of the law. You then look at Heckler, that says that if you're a participant in a federal program, you have an affirmative legal duty to go get familiar with those rules. Then you have these four letters. Each of these letters has something at the bottom of the letter. It expressly tells the insured, go look at Article 7-R. So for tolling, you have to have a defendant. That's not the hard issue. They're stuck with the law. The question is, they filed suit within one day, within one day of February 28, a year later. Yes, Your Honor. But they filed in state court. Yes, sir. And the issue, I think, is whether that is adequate to fulfill the statute of limitations. Okay. The policy, which... Well, and I guess before you even get to that, it's not clear to me that you actually preserved the defense of the statute of limitations on this record. Okay. On both issues. If I may, I'll take that one first. Went back through, and in our reply brief, we showed repeatedly where both... Danced around it. You never, as best I can tell, this was not something that was brought front and center to the trial judge in this case, which is why it's not surprising to me that there's no mention of it in his order. Your Honor, it was raised, the actual provision of the policy is cited... It's cited, but it's not cited in the context of the statute of limitations clause, but rather this issue, this procedural issue of whether or not a full claim was presented to the insurer. Well, we wouldn't go to the statutory issue in this circuit, because in battle, this Court said we're not going to look at the statute, we're just going to look at the policy. 7R. So that's what was cited. And there can't be... Actually, though, you're cutting yourself a little short. You did raise it as an affirmative defense. Yes. It was raised in the pretrial order. Yes. It was raised in the proposed findings of fact. And conclusions of... Yes, sir. And the Court just didn't address it. Did you argue it? Yes, sir. I don't know what happened in terms of off-the-record stuff, but, no, my associate did not raise it in closing argument, but it was... In fact, it was the plaintiffs who raised it, right? That's correct. So you've got the plaintiff who did raise it even in closing argument. Well, they did so preemptively, but it's just really odd to me that what seems to me to be a flat-out clear defense to this claim was something that never was really brought front and center to the trial judge in this case. Your Honor, I respectfully disagree. It is raised repeatedly in the pretrial plea. The natural thing you say the other side raised in closing argument, the natural thing would have been for you to raise it in the opening or pretrial. Right. In hindsight, and I did not try the case, I wish it had been raised more, but on the issue of is it properly... How do you raise it more? You know, you're so defensive. You raised it in the pretrial order. It's there, Your Honor. It's an issue in the pretrial order. Correct. There's proposed findings of fact and conclusions of law given to the judge after and it's raised there. And... I concur, Your Honor. We did raise it. We absolutely did. I don't know whether you need to verbally say it. I would have. I would have said it right out of the bat as the first thing I say to the Court, we shouldn't even be going here. I'm going to file a motion to dismiss this case because, and you say you rely on the policy, there's a statute on this. Right on point. Well... I agree. It seems to me you seem to be always wanting to come in the back door. Well, then I should. You can go ahead. Okay. We did raise it. It is raised repeatedly and we are asking the Court to address it and we are asserting based on Merrill, Heckler, Dawkins, and that tolling couldn't possibly apply because each of these letters tells this insurer... Is that an issue? I mean, it seems to me your February 8th letters... Why are you relying on four letters? You don't need four letters. You just need a denial of coverage. And we do have that. All right. Moving on to... Well, you didn't answer my question, which is the one I'm concerned about. Okay. Is if you file in State court within the limitations period, does that fulfill the statutory requirement? No. Because this express provision of the policy... Stick with the statute. Okay. The statute says you must file in the United States District Court for the district in which the insured property is located. It doesn't allow for filing in State court at all. It's not exclusive, doesn't it? Yes. Original exclusive. The statute was, in fact, amended in 1981 to specifically add that language because people were filing in State court, costing the government lots of money, and so they've made it clear. It's the only amendment to that jurisdictional statute in the history of the program in 1981 to add the words original exclusive to the statute. And so then after that, the policy was amended to say you must file in Federal court. And after that, three appellate courts and any number of district courts have looked at that and said that the State court is not a court of competent jurisdiction. One district judge went so far in the Parsons, no, James, the auto owner's case, saying that filing such a suit in a State court is no different than filing it in the kitchen drawer. Okay. You know, it's a little bit harsh. I don't know that we'll say that. Rather harsh, but... Other things in your kitchen drawer. But my point is that this had all been established way before this suit was filed in 2012. Your battle decision is from 2001 or 2002. Don't they concede that the Federal court has exclusive jurisdiction? I believe that they do, yes. I think their argument is that you somehow preserve your claim by filing it in State court. In other words, that that makes it timely. So that's the issue, that that's what their argument is. No, yes, that is what their issue is. Maybe no, that's not the answer. Correct. But yes, that is their issue. Right. Just as a proof of loss must be timely, complete, and sworn, this is another of one of the preconditions for invoking this Court's jurisdiction. This isn't a situation where the government is trying to get the insurer to do something. The insurer is trying to get the government to give him something. And the Supreme Court says in that rubric, you've got to do it perfect. My time is running short. If I may just make one point about the coverage question. The question that is at center to the coverage question is this. Where is the PEAT, P-E-A-T? Look at what the engineers are saying. You've got to go, you have a little tougher task. You've got the court-found erosion. Correct. And that is covered. Yes. And so you've got to argue that the court's finding was clearly erroneous based on the evidence. Here's how I do that. The erosion, the scouring, everything above the surface, that is plainly covered. My client from the get-go said, yes, we agree with that just documented. FEMA said the exact same thing. But the water that goes subsurface that caused the destabilization of the soils underneath that PEAT, which is 15 feet below ground, which led to the loss of soil support. You're just arguing the facts again. And I'm going to tell you, I looked at this sort of closely, and the other construction you could give on those same circumstances is that there was erosion around the columns while that water is swirling around under the waves and that there's, as a result of the erosion, surface erosion, the support for the columns is reduced so that they move and cause the cracking in the building. And to me, it's a very dicey question, the exclusion and the coverage. Understood. The exclusion to the exclusion in this policy. I mean, they talk about erosion and then you figure out what's erosion. There's some hypotheticals that are pretty clear. I mean, if the bank erodes away and the building falls, it's pretty clear. Yes. But when you have erosion, if they washed all the sand, say 10 feet of sand away from a piling, and now the piling is able to move a little more, it could cause damage to the cracking in the building. Your Honor, there is no such testimony in the record of any kind of swirling down. There was a storm. It was a hurricane. Absolutely. And it did scour out about 4 feet. But what the engineers are talking about is liquefaction of the soils. No voids were ever discussed. Is this an alternative argument if you lose? What we've presented to the court is the conditions precedent to whether the court has jurisdiction in the first place, then the coverage question, and then counsel for the Department of Justice will deal with the bad faith, the preemption issue. I understand that. But if they didn't file timely. You don't have to go any further. That's why I was wondering why you were talking about the facts. Okay. In the flood program, we always have a saying, winning the court's mind and its heart. Well, I think you got it. If I were you, I'd figure on the mind. You know what they say. If you have the law, you argue the law. And if you have the facts, you argue the facts. And if you have neither, you just argue. My understanding is the suit was filed too late and in the wrong form, and the court lacks jurisdiction. How about the State claim under the State statute? Plainly preempted. As to the question of whether that was raised properly, I had to raise the issue to the appellate court as to whether or not you want to get to the preemption. You've got to, don't you? Yes. Because the coverage case goes with the limitations. Correct. But there's no limitations defense, is there, to the State claim? No, just the opposite. In battle, you said it would apply to both, this Court. You said that the 9R would apply to both the Federal breach of contract claim and the State law-based extra contractual claims. That was the holding in battle. Well, this is a statutory claim, not part of the contract, isn't it? You're arguing that if the statute of limitations applies to the coverage claim, it automatically takes the other one with it? Yes, sir. All right. Thank you, Your Honor. Mr. Evans? Oh, excuse me. I have Mr. Riley. We've got a different order here. Yep. You're up here to protect the taxpayer money? Only part of it. Right. Good morning, and may it please the Court. Nicholas Riley for United States, as amicus curiae. As every other Federal court of appeals to address this issue has held, our view is that the National Flood Insurance Act and its implementing regulations squarely preempt the State law claims that the Woodsons have asserted here, specifically the claims under North Carolina Unfair Deceptive Trade Practices Act and the claim for attorney's fees, which also arises under a North Carolina statute. Once again, our view is that with respect to raising both an implied preemption argument and an express preemption argument with respect to the statute, the NFIA, we think there are several provisions of the NFIA, as other courts have recognized, that implicitly preempt these types of extra-contractual State law claims. With respect to the regulations, and specifically here we're talking about 44 CFR Part 61, which is the standard flood insurance policy that plaintiffs sign, we think that Article 9 of that policy, which again is embedded in the regulations, is an express preemption clause. You guys are so afraid to argue the statute. You know, this is the progression. The statute sets out what Congress's intent was. There is a regulation that implements the statute, and within the regulation they have a form of insurance policy which contains this language. So that's the tertiary level that you're looking at. The statute covers you guys pretty clearly. I completely agree, and we did raise it. And it says all disputes arising under this are exclusively to be filed in this context and only in the district court and with a cap of $250,000. I completely agree, and that's why we did raise it. That's the place you start, isn't it? It is, and that's why I said we think that the statute, again, we think the language of the statute isn't quite as explicit as the language of the policy, but we do think that the statute is sufficient on its own to find preemption here. And it's not just the provisions that Your Honor alluded to. I think it's bolstered by 42 U.S.C. 4001, which is the provision of the statute that articulates Congress's intent, which is to lower the costs imposed on the federal government and to expand coverage, affordable coverage, as widely as possible. How is a bad faith denial by an insurer consistent with Congress's intent to provide coverage? Well, I think if it is a bad faith denial, there are other mechanisms that I think Congress conceived of as ways to address that particular type of problem, such as administrative oversight, which is a responsibility that FEMA takes seriously and is, as we allude to in our brief, is increasing its administrative oversight of these WIO companies. What does that mean, administrative oversight? That just sounds like some bureaucratic mumbo jumbo. Well, in this context, I think what it means is that the Office of the General Counsel within FEMA is taking steps. One created within its office a specific team dedicated exclusively to overseeing these WIO companies, particularly the litigation that they're involved in, to determine whether or not the actions they've taken are consistent with FEMA's mandate under the program. And so there is, again, a whole staff that's dedicated specifically to looking at whether these WIO companies are, among other things, acting in good faith in processing these claims as they're supposed to be. The reason why allowing these state law claims to proceed would, I think, undermine Congress's intent, is because allowing these state law claims to proceed, particularly in a case like this, where the state law claims result in damages that are literally more than three times as high as the coverage cap that Congress explicitly set in the statute, if you subject these WIO companies, which are critical to the implementation of this program, to various deviations in state law, provisions of state law that allow the insureds to recover more than Congress ever wanted them to recover, that does undermine the implementation of the program. I think we can even look at the district court's own rationale here, which I'm sympathetic to, about wanting to ensure that all worthy claims are paid out, but allowing an individual insured to recover, again, more than three times the amount that Congress itself set as a coverage cap, actually impedes the ability of FEMA, which is, again, responsible for paying these claims, to provide worthy claims to other insureds, because it imposes this extra cost on the program. So, I mean, I certainly understand the concern about bad faith here. I just don't think that this is, that state law tort claims were what Congress had in mind. The response by the other side is this issue of responsibility is one of choice by the government, because the government can always look to these WIO companies to make it whole. What's wrong with that? Right. I see that my time is running out, but if I may respond, I think the answer to that is that it's actually not a matter of choice. FEMA enters into these arrangements with, as we pointed out in our brief, with these WIO companies, and Article III of those arrangements, these are agreements that are renewed annually with the WIO companies, says specifically, in fact, it's titled reimbursement, and it provides that FEMA will reimburse these WIO companies for adverse judgments entered against them as well as their litigation costs. Now, there is a provision that plaintiffs allude to, which is part of that Article III of the agreement with the WIO company, that says that FEMA may, the Office of the General Counsel, may make a determination not to pay in the event that the WIO company has acted, quote, significantly outside the scope, end quote, of the arrangement, the agreement with FEMA. That's an independent judgment that FEMA makes, and, again, FEMA makes that independent judgment, bearing in mind its mandate under the program, which relies on these WIO companies. So FEMA has to make an assessment as to, first, whether or not the conduct of the WIO company was significantly outside the scope, which, again, is a different inquiry, I think, than the state law inquiry of that faith. And then, second, in addressing how to go about whether or not to reimburse the company for these particular acts or the alleged misconduct, has to make a determination of what that impact is going to be on FEMA's ability to use WIO companies and to encourage WIO companies to participate in the program, which really does lower the cost of implementation. And I think that kind of analysis, that careful balancing of what Congress wanted and what the program needs to achieve is, you know, there is an independent judgment that does operate here under the arrangement effectively. I can see that my time is up. If there are no further questions, thank you very much. Good morning. May it please the Court. Brad Evans for the appellees, Gary and Becky Woodson. The appellees do ask that this Court affirm the judgment of the district court because, as the district court stated, the plaintiffs did everything they knew to do, including providing strong and uncontroverted proof that the damage to their house was caused by the floodwaters, and yet all state engaged in a long pattern of denial and cover-up. That is the circumstance in which we find ourselves today. And turning to the first issue before the court and the questions that the court addressed regarding the statute of limitations, all state has pressed that issue for the first time before this court, but the issue was never presented to the district court for adequate consideration or ruling. The pre-trial order is for. That is the entire purpose to define the issues presented to the court. Certainly the pre- It was included in the pre-trial order. It was included in the proposed findings. The district judge just didn't address it. Now, it could have been highlighted and presented, but to argue that it's been waived is incomprehensible to me. At every paper they have, they raised it. They just raised it as sort of a backdoor issue, a subsidiary issue, and I would be the first one to be highly critical of that approach as a matter of style. I would have filed a motion to dismiss early on. Well, what this court and other circuit courts have said in this sort of situation is that the district court is not required to find issues that may lurk in the pleading somewhere. And as Your Honor said, sort of a Not lurk in the pleadings. What is the pre-trial order for? Well, the pre-trial order is an extensive document that contains a number of issues, and I think what the Issues for trials. Correct. But the issue was never actually presented at trial. And that's the point, right? You can lodge all manner of things in the pre-trial order, but if you say nothing about them at the trial, you waive them. Correct, Your Honor, and that's exactly what happened here. So what's your best case for why that happened at the trial? That the defendants did not realize or understand that they even had an argument on this issue. I think what the What law says that that waives it, if you've made various paper motions that have included it? This court's Okay. Excuse me. This court's decision in Cortell v. Verizon from a couple of years ago. It's not the same situation. In Cortell, a different statute was raised. Correct. That's not the case here. They raised the correct statute. Well, they never actually referenced the statute, Your Honor. What occurred here is very similar to what occurred in Cortell. In Cortell, the statute of limitations was raised generally in the answer. The statute, Section 415, was raised in the pre-trial order. They didn't reference the particular subsection, but they did reference the statute, Section 415. And in the trial brief in Cortell I had the FEMA regulation before the district court, didn't I? The correct FEMA regulation. What I recall, Your Honor If they did that, that would distinguish it from Cortell, correct? I'm not sure it would, Your Honor, because In Cortell, they cited the wrong statute. The correct FEMA regulation would be the correct governing law, right? If they cited the correct regulation, that would be the correct regulation. But I'm not sure it's a meaningful distinction from Cortell, because what Cortell really focused on was whether or not the issue was presented to the district court in such a way that the district court was able to recognize that this was an issue that it needed to respond and address. What about the fact that it was mentioned in the proposed findings and conclusions of law? Well, what's included in the proposed findings and conclusions is simply whether or not the claim was time-barred. That's limitations. Well, it is, but it's not referenced with sufficient specificity in order for the court to understand that that was an issue to be addressed at trial. It may not have been highlighted, but it was raised, and even raised after the trial, presented to the court as a proposed finding. Well, it was presented to the court. The proposed findings were submitted to the court prior to trial, and there were a number of issues raised in those proposed findings and conclusions that were not addressed at trial in any way, such that the district court understood that it had some sort of obligation or needed to rule on those particular issues. Did the insurer have to present evidence on the statute of limitations at trial? The insurer, yes. The insurer, it would be the insurer's burden in order to establish that. But what evidence would be required? I mean, it seems clear on the face of the papers that the statute was not, that the statute of limitations was not complied with. Well, what the insurer is required to do in that situation, and I think a critical component of this argument, is that the insurer needs to bring the court's attention to the particular facts or issues that are before the court that the court needs to address. Here, what the insurer brought to the court's attention actually drew the court's attention away from the issue that the insurer now presents. So the only... You can't be serious. Defendants proposed findings of fact and conclusions of law submitted to the district judge for finding in this case after the trial. Plaintiffs filed their lawsuit more than one year from the date of the original denial of their claim. Therefore, the suit is time barred. Can it be any clearer? What the defendants never did, though, Your Honor, is explain to the court what they contended was the date on which the statute of limitations began to run. They never argued that issue for the district court. And what they even more importantly never did before the district court was explain to the district court this issue of filing in federal court versus filing in state court. That was an issue that was never presented. If it had... Well, you can see it in your brief. At 25, federal courts have exclusive jurisdiction over the claimant issue in this case. That's a direct quote. So there's no question about that, is there? We do acknowledge that the federal courts have jurisdiction over the claim. Exclusive? Correct. Federal courts do have exclusive jurisdiction over this case. So why did they have to bring that when everybody agrees that that's the case? Well, because the issue is whether the filing in state court would toll the statute of limitations. There's a Fourth Circuit law that says filing in state court doesn't toll a federal statute of limitations. I'm not sure that's an issue that's been decided by this court specifically. In 1992. Well, Your Honor, our contention is that the filing in state court, and we would have presented more evidence on this issue at trial had the issue been presented by the defendants in such a way. Here's a memorandum that they filed immediately before the court had to rule. All they had to put into evidence is that one letter, and it was in evidence. But this is what they say. Article 7R of the Plaintiff's SFIP states that if you do not sue, you must start the suit within one year after the date of the written denial of all or part of the claim. This requirement applies to any claim that you may have under the policy and to any dispute that you may have arising out of handling the claim under the policy. Plaintiffs file their lawsuit more than one year from the date of the original denial of all or part of their claim. Therefore, the suit is time barred. Could it be any clearer? Yes, Your Honor, because what is missing is exactly what Your Honor alluded to during Allstate's argument. And that is nothing was referenced with regard to the filing in state court versus filing in federal court. In fact, the only thing that was raised at the state court, at the state court level that even implied the statute of limitations was at issue, was a question regarding that January 23rd letter on the cross-examination of Gary Woodson. Some questions were asked about that January 23rd letter and whether he considered it a denial. And so the only even implicit argument, and again, it was not that the counsel for Allstate never actually said statute of limitations at trial. But the only even implicit argument on this subject focused on January 23rd. That suggested to the court, if the court were even to consider that the statute of limitations was at issue, that would suggest. You're saying they didn't argue it adequately. The question is did they waive it. Correct. And it seems to me they clearly could not have waived it by raising it explicitly in the proposed findings, in the memorandum of law, in the proposed pretrial order, in the pretrial order, and in the affirmative defense in the answer to the complaint. Just think about what kind of precedent that would make for another case if we said that a party that did all of those things had still not preserved their claim. I mean. I think the substantial distinction, I understand Your Honor's concern. I think the substantial distinction here has to do with just saying there's a one-year statute of limitations, just making the court generally aware that that issue was out there, and then arguing about the January 23rd letter. In other words, suggesting that the filing, if you look at the defendant's proposed findings of fact and conclusions, they reference the fact that the case was filed on February 27th. They say nothing about the removal date. They say nothing about the fact that the case was removed on April 1. And so the court's attention. They didn't need to because it was never filed in the district court until after the time. But they don't reference that in those proposed findings and conclusions. Well, if you had raised, if you had provided an argument that your state court filing sufficed, surely they would have argued it. Well, we weren't aware that it was an issue. Again, the. . . You weren't aware it was an issue? Did you read the pleadings? I mean, did you read their papers? Well, they didn't. . . The pretrial order, proposed findings, the memorandum of law? We thought we were safe with the filing on February 27th. And that's the point that I'm making is that the only attention given. . . Didn't you. . . And I don't think you tried the case, but didn't somebody at trial actually argue the statute of limitations issue? I did try the case, Your Honor. Oh, you did? I did. And, again, the only argument. . . And this is the point that I'm trying to make. The only argument. . . What did you argue? I'm sorry? What did you argue? On the. . . In closing, Your Honor, I responded to two questions. . . I believe it was two questions that were. . . Tell me what you argued. That were made to Gary Woodson about the January 23rd letter. And the argument that I made to the court was that the January 23rd letter was not a denial of his claim. And, therefore, the statute of limitations would not begin running on January 23rd. You might be right about that. And. . . And that was. . . That was the only issue that was presented. And that's why I say there's a critical. . . You're addressing the limitations. That's your answer. Defense to it. That's correct, Your Honor. And I acknowledge the fact that I did say statute of limitations. But I was addressing that issue based on implied questions. And, again, counsel for Allstate never said statute of limitations. They asked a couple of questions about the January 23rd letter. And I, in my closing, mentioned the fact that the January 23rd letter was not a denial of the claim. It was a rejection of the proof of law. But you knew about the subsequent letter, right? Certainly. And Mr. Woodson testified at trial that he understood the February 28th letter to be a denial. And that's the critical point. That's the critical point. If Allstate, at that time, were pressing the issue or arguing the issue that they are now arguing, which never came up at trial, it would have been very easy for them to say, Your Honor, Mr. Woodson has acknowledged that the claim was denied on the 28th. He filed in state court on the 27th. The filing in state court is insufficient. That never came up. And if it had, if that had come up in the pretrial briefing, if that had come up in trial, we may have done things very differently and presented additional evidence on equitable tolling that we've now argued in our trial brief. But that issue simply never came up before the trial court. We didn't have the opportunity to address it. You've made those arguments here. We have. They don't go anywhere. But the trial court never had an opportunity to address those issues. It wouldn't make any difference. They're questions of law, correct? As far as whether you had an opportunity to present those to the trial court. Because we can determine questions of law just as well as the trial court. Certainly. If they were meritorious, you would have lost nothing. Are you talking about the equitable tolling argument? The equitable tolling argument, I would say that we may have presented additional evidence on that issue at the trial court level regarding what Mr. Woodson knew and when he knew it and how he responded. There were subsequent communications between Mr. Woodson and Allstate after the denial of his claim that we did not get into in detail at trial that may have bearing on that equitable tolling issue. But, again, it just never came up. So it was not an issue we were prepared to address. What was the explanation for not filing the claim so late? Now, I was not involved in the case at the time of filing, Your Honor. You didn't ask prior counsel. Prior counsel filed the case in state court on February 27th. I am not aware of what his thought process was in getting into that. I do know that Mr. Woodson, and I think this may be in some of his trial testimony, always believed that Allstate was going to come back to him. There was a letter from FEMA indicating that Allstate should get back in touch with him at some point regarding additional information that might be needed, and Allstate never did. So there was some degree of waiting on Allstate to get back to him, which never occurred. But, again, the issue of the state versus federal filing just never came up prior to trial, and so it was not an issue that we got into. Your Honors, I'd like to turn briefly to the preemption issue, which I think is the other question that the Court has addressed directly today, and just speak to that point briefly. Again, the district court found facts relating to bad faith conduct on behalf of Allstate, and so the question is where there is a finding of bad faith and unfair trade practices on behalf of Allstate, are people like the Woodsons, insureds who are the victims of such bad faith conduct, are they left with a wrong without a remedy? And our contention is that is not... They wouldn't have a remedy under a federal program unless the federal government had established it, correct? Correct. So the federal government gets to tell you what the rules are. That's correct. That's correct, Your Honor. And in this circumstance, I do think that the federal government has provided room for these types of claims and has not expressly precluded these claims. Obviously, we begin with the presumption against preemption in the absence of some specific directive, and the burden rests with Allstate to try to establish preemption in some way. But I would point out that in viewing the regulations which are enabled by the statute, and again, let me start with the statute to Judge Niemeyer's point. Under 42 U.S.C. 4072, it does indicate that the federal courts have exclusive jurisdiction over the case. Exclusive jurisdiction, that means the case has to be tried in federal court. I don't find anything in the statute that specifically says you may not bring any sort of state law claim in federal court as a claim that goes along with the federal claims. And in fact, what we do have in the regulations that are enabled by the statute is room for state court claims. And I'd reference the court to 42 U.S.C. 4081C, which is a statute that expressly states that FEMA may not hold an agent or broker harmless for errors or omissions. And so what that statute, what that enactment by Congress represents, is liability for brokers and agents for errors and omissions, that it may have liability that FEMA, the federal government, would not cover under this NFIA regime. That deals with brokers and agents. That's not what we're dealing with. We're dealing with the company, the WIO company. But there is a regulation on that point, and that's the one that was mentioned in prior argument, 44 CFR 62 Appendix A, Article 3D3A. And that provision in the regulation states that we're dealing with the litigation context. For any litigation arising out of an NFIP policy, the FEMA Office of Chief Counsel, OCC, is to review it. And the regulation says if the FEMA OCC finds that the litigation is grounded in actions by the company that are significantly outside the scope of this arrangement and or involves issues of agent negligence, then the FEMA OCC shall make a recommendation as to whether or not that should be reimbursed. As Mr. Riley said, there is some judgment call on the government's part as to whether or not it needs to reimburse those. But the point of that regulation is that it specifically contemplates that there may be conduct, there may be litigation, there may be liability to pay dollars and cents by a WIO company for conduct that is significantly outside the scope of the arrangement. So it may be liable in ways that the government does not have to cover. That could only be a state court claim. What about the provision in Section 9 that says this policy and all disputes arising from the handling of any claim under this are governed exclusively by the flood insurance regulations issued by FEMA and the National Flood Insurance Act of 1968 and federal common law? There are three things that govern it, right, in what Your Honor just stated. Right. And you didn't address this provision at all in your paper, so I'm delighted to hear what you have to say about it. Thank you, Your Honor. There are three things that are referenced, the FEMA regulation, the NFIA, and federal common law. The first one is the one that I'm focusing on here, the FEMA regulations. It says that these claims are governed by the FEMA regulations. Why don't you address the provision Judge Motz just quoted? It says all disputes. Correct. Correct. And so if all disputes are governed by the FEMA regulations, this FEMA regulation that I've just cited to the court, 44 CFR Part 62 Appendix A, is precisely the regulation that governs here. So in essence, that provision that Judge Motz just identified. I didn't see that as giving a cause of action to a, you can read it again, to a holder of a policy. Read me again what you're writing. I don't think it says that, but you go ahead. Well, it says that the claims, that claims arising out of the policy are governed by FEMA regulations. I know what the one I wrote, I read to you says. I want to, you are relying on some other provision. I want to hear what it says again. Correct. So it's referring you back, the one that Your Honor read refers you back to the one that I just read, and the one that I just read says there may be litigation, if there is litigation arising out of an NFIP policy that is significantly outside the scope of this arrangement, then FEMA is not responsible for it. And so that regulation. How does that give your client a cause of action against the insurer? Because out of the realm of federal law, the body of federal law that would govern. No, it just says that FEMA is not going to pay on it. It doesn't say it's not governed by federal law. Correct. But that expressly contemplates that there is going to be some sort of cause of action, that there is a hole. There is essentially a donut hole in this regime that provides a cause of action that is outside the scope of the arrangement between the parties. If we included this, we would create a significant split in the circuits, correct? I'd acknowledge the fact that most of the other circuits that have addressed this issue have found the case to be preempted. I don't think, I don't think that any of those cases have specifically addressed the argument that I have just made regarding this regulation. Most of them focus on the exclusivity of federal jurisdiction. And you don't make this regulation in your papers. The argument you just made to me isn't in your papers. You don't cite or quote what I just read to you. I don't think we, I'm not sure. No, you couldn't have made the regulation, you couldn't have made the argument that you just made. We do. You say it's an exception to that. Correct. We do specifically cite the regulation that I read just a moment ago from Part 62, Appendix A, that specifically contemplates that there may be liability for WIO companies outside the arrangement. They're significantly outside. What does it mean to be outside of the arrangement? Does the regulation define that? The regulation does not define it more specifically. But certainly if we're dealing with outside the scope of the arrangement, I think. The arrangement is the insurance policy, right? So this whole dispute is about coverage under the policy. That seems to me to be well within the arrangement. The arrangement contemplates legal, appropriate, lawful adjustment of claims. If a WIO carrier is engaging in affirmatively bad faith conduct, that is outside the scope of the arrangement, just as defamation or infliction of emotional distress or some other claim might be an action by an insurance. That is your case, but I'm not sure that a bad faith assessment of the claim, part of the policy, was contemplated as being outside of the arrangement. But I get your point. Our argument, Your Honor, would be that the arrangement calls for appropriate adjustment of the claim Congress never intended for its WIO carriers to engage in bad faith conduct. Thank you, Mr. Robinson. Thank you, Your Honor. Mr. Nielsen. Your Honor, I'd call to your attention two Fifth Circuit decisions that directly go to these structural points counsel was talking about. Section 4081C of the Act only applies to insurance agents. It has no application to insurance companies such as my client, a case looking at the legislative history and the wording of that statute, 415F3, 384 at 388, as to how the arrangement works. And the arrangement is a separate document from the insurance policy. The insurance policy governs what the insured can or cannot get. The arrangement governs the relationship between FEMA and the insurance companies. When a claim comes in, a lawsuit rather, and a decision has to be made as to whether or not FEMA is going to view that as within the scope of the arrangement, meaning federal funds are in play, FEMA's lawyers look at it, and then if they say, oh, no, this has to do with a homeowner's lawsuit or an adjuster, say our favorite example is an adjuster punched an insured. That would be outside the scope. We would get a letter. The Fifth Circuit, in a case called Grissom v. Liberty Mutual, explained that there is a presumption that federal funds are in play unless the plaintiff produces a letter from the insurance company that he got from FEMA saying, hey, this is outside the scope of the arrangement. Not only is there no such letter in this record, the brief of the United States has confirmed without equivocation they're fully at stake for any judgment this court would render. So on the federal funds issue, my client has absolutely no exposure under either the breach of contract action or any type of extra-contractual action. Structural point is to the statute. Two statutes are in play. Section 4072 deals with the jurisdiction of the court. As to the question counsel raised saying there's nothing in the statute that says only federal law governs, I would look at section 4019, which says that it is for FEMA to make the rules for the adjustment of the claims. That could have said it is for FEMA and the states or whatnot. It says FEMA makes the rules, and that's the statutory predicate of the express preemption provision. So you've got 4072, 4019. And then my last point is to the time bar rule. All of these letters are in the record without objection, and at trial, both counsel are questioning witnesses about these letters that have no bearing upon the case other than the time bar. Why they didn't file their suit on time, I can ask you, why didn't you file a motion to dismiss? Your Honor, in hindsight, maybe we should have, but here is the reason why. I've never seen that in my practice where people had statute of limitations defenses and didn't raise it. It seems to me it adds to the expense for your client to go to trial. Here's the balancing act, and maybe they should have filed the motion earlier. A lawsuit comes in in a Federal flood program against an insurance company and say they don't have a proof of loss or they don't have this or they don't have that. The proof of loss is a petty argument. Statute of limitations is a substantial argument. And it seems to me if you have that defense, you come in within two weeks and file a motion for summary judgment, putting in your denial letter and arguing that the case shouldn't be tried. You spent all this time trying this case and findings of fact, conclusions of law. Your Honor, we have always. It's a type of judgment call that. And I can explain. We have always been taught by FEMA. You don't need to explain your attorney strategy. I was just making a motion. But there was one, Your Honor. All right. All right. Do you have any other questions of me, Your Honors? Thank you. Appreciate it. All right. We'll come down and recounsel and proceed on to the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Albert Diaz